# No. 21-15862

IN THE
# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**
*Plaintiff-Appellant,*

*v.*

**SALESFORCE.COM, INC.,**
*Defendant-Appellee.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
VINCE CHHABRIA, DISTRICT JUDGE • CASE NO. 3:20-CV-09443-VC

---

# APPELLANT'S OPENING BRIEF

---

**HORVITZ & LEVY LLP**
MITCHELL C. TILNER
EMILY V. CUATTO
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

ATTORNEYS FOR PLAINTIFF-APPELLANT
**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**

## CORPORATE DISCLOSURE STATEMENT

Travelers Property Casualty Company of America is 100% owned by the Phoenix Insurance Company. The Phoenix Insurance Company is 100% owned by Travelers Indemnity Company. Travelers Indemnity Company is 100% owned by Travelers Insurance Group Holdings, Inc. Travelers Insurance Group Holdings, Inc. is 100% owned by Travelers Property Casualty Corp. Travelers Property Casualty Corp. is 100% owned by the Travelers Company, Inc., which is a publicly traded company. No person or entity owns more than 10% of the Travelers Company, Inc.'s common stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUE PRESENTED ................................................ 1

STATEMENT OF THE CASE ................................................................ 2

    A.    Travelers issues general liability insurance policies to
Salesforce.............................................................................. 2

    B.    Salesforce is sued for violating the Texas Sex
Trafficking Statutes. ............................................................ 5

    C.    Travelers defends Salesforce in the Underlying
Lawsuits under a full reservation of rights, then files
this declaratory relief action for a judicial
determination that no defense duty is owed. ........................ 6

    D.    The district court dismisses Travelers's declaratory
relief action.......................................................................... 8

SUMMARY OF THE ARGUMENT .......................................................... 8

ARGUMENT ...................................................................................... 11

I.    As a matter of law, Travelers has no duty to defend
Salesforce in the Underlying Lawsuits because the plaintiffs'
petitions do not seek potentially covered damages. ...................... 11

    A.    The district court's order is reviewed *de novo*. ...................... 11

    B.    An insurer owes a duty to defend only those suits that
seek potentially covered damages........................................ 12

    C.    The petitions in the Underlying Lawsuits do not seek
potentially covered damages because of "bodily injury." ..... 14

i

1.  The conduct prohibited by the Texas Sex Trafficking Statutes cannot be an "accident." ............ 14

2.  Recovery under the Texas Sex Trafficking Statutes requires proof of intended or expected bodily injury, which is excluded from coverage ........... 24

D.  The petitions in the Underlying Lawsuits seek damages that are excluded from "personal injury" coverage. ................................................................. 28

E.  The plaintiffs in the Underlying Lawsuits abandoned their original negligence claims, which are not legally viable in any event. ............................................. 30

II.  Travelers's complaint should be reinstated with directions that all the declaratory relief sought in the complaint be granted. ............................................................... 34

CONCLUSION ............................................................... 37

STATEMENT OF RELATED CASES ..................................... 38

CERTIFICATE OF COMPLIANCE ........................................ 39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) .............................................................. 36

*Aquarius Well Drilling Inc. v. Am. States Ins. Co.*,
  593 F.App'x 720 (9th Cir. 2015) .......................................................... 18

*Aydin Corp. v. First State Ins. Co.*,
  18 Cal.4th 1183 (1998) ........................................................................ 13

*B.B. v. Cnty. of Los Angeles*,
  10 Cal.5th 1 (2020) .............................................................................. 24

*Blue Ridge Ins. Co. v. Stanewich*,
  142 F.3d 1145 (9th Cir. 1998) .............................................................. 12

*Buss v. Superior Ct.*,
  16 Cal.4th 35 (1997) ............................................................................ 35

*Butler v. Clarendon Am. Ins. Co.*,
  317 F.App'x 648 (9th Cir. 2009) .......................................................... 18

*Catlin Underwriting Agencies Ltd. v. San Diego Refrigerated
  Servs., Inc.*,
  469 F.App'x 529 (9th Cir. 2012) .......................................................... 17

*Certain Underwriters at Lloyd's of London v. Superior Ct.*,
  24 Cal.4th 945 (2001) .......................................................................... 35

*Collin v. Am. Empire Ins. Co.*,
  21 Cal.App.4th 787 (1994) .................................................................. 15

*Cont'l Alloys & Servs. (Del.) LLC v. YangZhou Chengde Steel
  Pipe Co.*,
  597 S.W.3d 884 (Tex. App. 2020) ........................................................ 31

*Delgado v. Interinsurance Exch. of Auto. Club of So. Cal.*,
  47 Cal.4th 302 (2009).................................................. 13, 15, 16, 23, 24

*Dennis Produce, Inc. v. Hartford*,
  260 F.App'x 989 (9th Cir. 2007).......................................................... 18

*Doe v. Facebook, Inc.*,
  142 S.Ct. 1087 (2022).......................................................................... 20

*Friedman Prof. Mmgt. Co. v. Norcal Mut. Ins. Co.*,
  120 Cal.App.4th 17 (2004) ............................................................ 13, 14

*Galvani v. Tokio Marine & Nichido Fire Ins. Co.*,
  544 F.App'x 791 (9th Cir. 2013).......................................................... 18

*Gdowski v. State Farm Gen. Ins. Co.*,
  839 F.App'x 154 (9th Cir. 2021).......................................................... 17

*Giddings v. Indus. Indem. Co.*,
  112 Cal.App.3d 213 (1980)................................................................... 15

*Gonzalez v. Fire Ins. Exch.*,
  234 Cal.App.4th 1220 (2015) .............................................................. 16

*Gray v. Zurich Ins. Co.*,
  65 Cal.2d 263 (1966) .................................................. 22, 23, 24, 26, 27

*Gunderson v. Fire Ins. Exch.*,
  37 Cal.App.4th 1106 (1995) ............................................. 13, 14, 31, 32

*Henstooth Ranch, LLC v. Burlington Ins. Co.*,
  770 F.App'x 804 (9th Cir. 2019).......................................................... 17

*In re Facebook, Inc.*,
  625 S.W.3d 80 (Tex. 2021) ...................................................... 20, 28, 33

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021)................................................................ 12

*J. C. Penney Cas. Ins. Co. v. M. K.*,
  52 Cal.3d 1009 (1991) ................................................................... 24, 26

*Kogler v. State Farm Gen. Ins. Co.*,
    788 F.App'x 461 (9th Cir. 2019)..........................................17

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co.*,
    5 Cal.5th 216 (2018)........................................... 15, 21, 22

*Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*,
    792 F.3d 520 (4th Cir. 2015)..............................................17

*Lyons v. Fire Ins. Exch.*,
    161 Cal.App.4th 880 (2008) ......................................... 16, 29

*Mechammil v. City of San Jacinto*,
    653 F.App'x 562 (9th Cir. 2016)..........................................36

*Merced Mut. Ins. Co. v. Mendez*,
    213 Cal.App.3d 41 (1989)..................................................15

*Montrose Chem. Corp. v. Superior Ct.*,
    6 Cal.4th 287 (1993)........................................... 12, 13, 34

*Quan v. Truck Ins. Exch.*,
    67 Cal.App.4th 583 (1998) ...............................................15

*Reagen's Vacuum Truck Serv., Inc. v. Beaver Ins. Co.*,
    31 Cal.App.4th 375 (1994) ...............................................25

*Royal Globe Ins. Co. v. Whitaker*
    181 Cal.App.3d 532 (1986)............................................ 15, 16

*Scottsdale Ins. Co. v. MV Transp.*,
    36 Cal.4th 643 (2005)......................................................14

*St. Paul Fire & Marine v. Superior Ct.*,
    161 Cal.App.3d 1199 (1984)...............................................16

*State Farm Fire & Cas. Co. v. Drasin*,
    152 Cal.App.3d 864 (1984)........................................ 13, 20, 28

*Travelers Com. Ins. Co. v. Jennifer A.*,
    699 F.App'x 607 (9th Cir. 2017)..........................................17

*Travelers Prop. Cas. Co. of Am. v. Mericle,*
  486 F.App'x 233 (3d Cir. 2012) ........................................................ 30

*UMG Recordings, Inc. v. Am. Home Assurance Co.,*
  321 F.App'x 553 (9th Cir. 2008)........................................................ 18

*Upland Anesthesia Med. Grp. v. Doctors' Co.,*
  100 Cal.App.4th 1137 (2002) ........................................................... 25

*Waller v. Truck Ins. Exch., Inc.,*
  11 Cal.4th 1 (1995)................................................................... 12, 14

## Statutes

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1332(a) ............................................................................ 1

28 U.S.C. § 1332(c) ............................................................................ 1

28 U.S.C. § 2201 .............................................................................. 36

47 U.S.C. § 230 .......................................................................... 33, 34

47 U.S.C. § 230(c)(1) ....................................................................... 33

47 U.S.C. § 230(e)(3) ....................................................................... 33

47 U.S.C. § 230(f)(2) ....................................................................... 33

47 U.S.C. § 230(f)(4) ....................................................................... 33

California Insurance Code § 533.................................................... 25, 26

Texas Civil Practice & Remedies Code Annotated §§ 98.001–
  98.007, 98A.001–98A.006 .......................................................... 2, 5, 9

Texas Civil Practice & Remedies Code Annotated § 98.002(a) ............. 19

Texas Civil Practice & Remedies Code Annotated § 98A.002(a) ........... 18

vi

## Rules

Fed. R. Civ. P. 12.................................................................. 12

Fed. R. Civ. P. 12(b)(6) .................................................. 11, 36

Tex. R. Civ. P. 65 ............................................................... 31

# APPELLANT'S OPENING BRIEF

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a) and (c) because the parties are citizens of different states and the amount in controversy exceeds $75,000. (See 3-ER-432.)

On April 13, 2021, the court entered a final judgment dismissing the action. (1-ER-2.) Plaintiff Travelers Property Casualty Company of America (Travelers) filed a timely notice of appeal from the judgment on May 12, 2021. (3-ER-442.) This Court has jurisdiction over Travelers's appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUE PRESENTED

Victims of online sex trafficking and compelled prostitution sued defendant Salesforce.com (Salesforce) in Texas under two Texas statutes permitting victims to seek damages from a defendant who (1) "knowingly or intentionally engages in promotion of prostitution, online promotion of prostitution, aggravated promotion of prostitution, or aggravated online promotion of prostitution that results in compelling prostitution with respect to the victim," or (2) "intentionally or knowingly benefits from participating in a venture that traffics another

1

person." Tex. Civ. Prac. & Rem. §§ 98.001–98.007, 98A.001–98A.006 (collectively referred to as the Texas Sex Trafficking Statutes).

The victims allege that Salesforce is liable to them under the Texas Sex Trafficking Statutes because Salesforce profited from selling technology tools and services that it knew were being used to compel the victims into prostitution and traffic them. Salesforce is accused only of knowing and intentional, i.e., non-accidental, wrongful conduct and cannot be liable to plaintiffs absent proof of such conduct.

The general liability insurance policies Travelers issued to Salesforce limit coverage to accidents and expressly exclude coverage for knowingly harmful conduct.  Do the victims' allegations expose Salesforce to liability for damages potentially covered by the policies, triggering Travelers's duty to defend?

## STATEMENT OF THE CASE

### A.  Travelers issues general liability insurance policies to Salesforce.

Travelers issued commercial general liability insurance policies to Salesforce for the policy years 2012 through 2018 (the Travelers Policies).  (3-ER-433–34.)

Under the Travelers Policies, Travelers agreed to defend and indemnify Salesforce against third-party claims seeking covered damages.[1] Two coverage parts are relevant here: Coverage A ("bodily injury") and Coverage B ("personal injury").

Coverage A provides in relevant part:

> a. [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. [Travelers] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Travelers] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" . . . only if: [¶] (1) The "bodily injury" . . . is caused by an "occurrence" . . . .

(3-ER-299.) "Occurrence" is defined as an "accident." (3-ER-312.)

Coverage B provides in relevant part:

---

[1]  Travelers also issued umbrella policies for the same policy years. (3-ER-434.)  Travelers maintains that no coverage is available under the umbrella policies for the matters at issue, but Salesforce does not contend Travelers owes a duty to defend under those policies.  Indeed, no duty to defend can arise under those policies unless and until scheduled and other underlying insurance is properly exhausted through the payment of covered damages, which has not occurred.  (2-ER-8; 3-ER-380–81.)

3

> a. [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal . . . injury" to which this insurance applies. [Travelers] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Travelers] will have no duty to defend the insured against any "suit" seeking damages for "personal . . . injury" to which this insurance does not apply. . . .

(3-ER-303.) " 'Personal . . . injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses: [¶] a. False arrest, detention, or imprisonment." (3-ER-312.)

The Travelers Policies contain various exclusions from coverage, including exclusions for deliberate harmful acts. Specifically, the Travelers Policies exclude coverage for "[b]odily injury" "expected or intended from the standpoint of the insured." (3-ER-300.) They similarly exclude coverage for "[p]ersonal injury" "caused by . . . the insured with the knowledge that the act would violate the rights of another and would inflict 'personal . . . injury.'" (3-ER-303.)

4

**B.    Salesforce is sued for violating the Texas Sex Trafficking Statutes.**

Salesforce was sued in seven Texas state court lawsuits spanning the policies' coverage periods.  (3-ER-432; *see* 2-ER-29–283.)  The cases were consolidated into a Texas state court multidistrict litigation proceeding entitled *In re Jane Doe Cases* (hereinafter referred to as the Underlying Lawsuits).  (2-ER-23.)

As finally amended, the petitions filed in the Underlying Lawsuits (which are materially indistinguishable from each other) allege that Salesforce is liable to the plaintiffs under the Texas Sex Trafficking Statutes.  2-ER-29–260, 3-ER-432, 434–36; Tex. Civ. Prac. & Rem. §§ 98.001–98.007, 98A.001–98A.006.  The plaintiffs specifically allege that Salesforce supplied "'technology tools, operational tools, operational support, and platform'" to Backpage.com (Backpage), a notorious online prostitution site, knowing that those tools and services would enable Backpage's sex trafficking and compelled prostitution business.  (3-ER-432; *e.g.,* 2-ER-37–42.)  The plaintiffs further allege that Salesforce knowingly received financial benefits from Backpage's sex trafficking and compelled prostitution business.  (*See* 3-ER-436; *e.g.*, 2-ER-40.)

Although the plaintiffs in the Underlying Lawsuits initially pleaded negligence claims in addition to their statutory claims (*see, e.g.*, 2-ER-275–76), by October 14, 2020, they had filed amended pleadings omitting any negligence claims against Salesforce (2-ER-16–17, 23; 3-ER-434–36; *e.g.*, 2-ER-53–57, 229–32). The petitions now allege no claims other than violation of the Texas Sex Trafficking Statutes. Consequently, Salesforce's liability in the Underlying Lawsuits depends entirely on the plaintiffs' ability to prove their damages arose from Salesforce's knowing or intentional participation in, and choice to benefit from, coerced prostitution and criminal sex trafficking. (*See* 3-ER-435–36.)

### C. Travelers defends Salesforce in the Underlying Lawsuits under a full reservation of rights, then files this declaratory relief action for a judicial determination that no defense duty is owed.

Salesforce tendered the defense and indemnity of the Underlying Lawsuits to Travelers. (3-ER-432, 436.) Travelers informed Salesforce that the Underlying Lawsuits alleged only intentional and knowingly wrongful conduct, and that as a result, the Underlying Lawsuits do not seek any potentially covered damages. (3-ER-436.) Travelers nonetheless accepted the tender of the defense, but did so under a full

reservation of rights to seek both a judicial declaration of no coverage and reimbursement of all defense costs incurred after October 14, 2020. (3-ER-432–33, 436.)

Travelers permitted Salesforce to select independent counsel to defend it, and Travelers has been paying for that defense ever since. (3-ER-436.)

Travelers then filed this action on December 30, 2020—shortly after the plaintiffs in the Underlying Lawsuits amended their petitions to limit the claims to those available under the Texas Sex Trafficking Statutes. (3-ER-431.) Travelers's complaint sought judicial declarations that (a) any duty Travelers might have owed to defend Salesforce in any of the Underlying Lawsuits ceased on October 14, 2020, when the petitions were amended; (b) Travelers is entitled to reimbursement of all defense costs it paid after that date; and (c) Travelers will owe no duty to indemnify Salesforce for any settlement of, or judgment entered in, the Underlying Lawsuits. (3-ER 432–41.)

**D.    The district court dismisses Travelers's declaratory relief action.**

Salesforce moved to dismiss Travelers's claim for declaratory relief on the duty to defend, and to dismiss or stay the proceedings as to the other claims pending resolution of the Underlying Lawsuits.  (2-ER-7.)

The district court granted Salesforce's motion.  The court reasoned that "[t]he facts underlying the Texas litigation could support claims for negligence" or Salesforce could prove it acted "only negligently and not intentionally or knowingly," and as a result, there was a potential for coverage.  (1-ER-3.)  The district court dismissed with prejudice Travelers's complaint as to the duty to defend and dismissed the other claims without prejudice to Travelers's right to re-file them at the conclusion of the Underlying Lawsuits.  (1-ER-4.)

## SUMMARY OF THE ARGUMENT

An insurer owes a duty to defend its insured only against suits that expose the insured to liability for potentially covered damages. When the only possible outcomes of the action are either damages that are not covered or no liability, the insurer has no duty to defend.  Those

8

are the only two possible outcomes for Salesforce in the Underlying Lawsuits, so Travelers has no duty to defend.

The Travelers Policies potentially cover damages for "bodily injury" only if the "bodily injury" was caused by an "occurrence," defined as an "accident." In addition, the policies exclude coverage for "bodily injury" that was expected or intended by the insured.

The Travelers Policies also potentially cover damages because of one or more offenses enumerated under the definition of "personal . . . injury" (including false imprisonment), but the policies specifically exclude "personal injury" that was "caused by . . . the insured with the knowledge that the act would violate the rights of another and would inflict 'personal . . . injury.'"

To recover damages under the Texas Sex Trafficking Statutes, the plaintiffs must prove that Salesforce participated in sex trafficking and/or promoted compelled prostitution "knowingly or intentionally." Texas Civil Practice & Remedies Code Annotated §§ 98.001–98.007, 98A.001–98A.006. Under the statutes, any damages Salesforce might have to pay require plaintiffs to prove conduct that is not accidental, that Salesforce necessarily expected or intended to be harmful, and that

Salesforce knew would violate the plaintiffs' rights to be free from compelled sexual activities. The plaintiffs cannot recover damages against Salesforce for merely negligent or accidental conduct. As a result, either Salesforce will be held liable in the Underlying Lawsuits for damages not covered by the Travelers Policies, or Salesforce will be held not liable. In neither event would Salesforce incur liability to pay damages covered by the Travelers Policies. Because there is no potential for coverage, there is no duty to defend.

The district court therefore erred by dismissing Travelers's complaint. The district court's speculation that the plaintiffs in the Underlying Lawsuits might someday amend their pleadings to state negligence claims cannot support its conclusion that Travelers has a duty to defend Salesforce. The potential for coverage must be determined based on the facts and theories pled in the complaint, not speculation about how the complaint might be amended in the future–especially where, as here, any negligence claims are legally untenable. The plaintiffs in the Underlying Lawsuits abandoned their negligence claims in October 2020, and there is no factual or legal basis to conclude they might be reasserted.

This Court should reverse with directions to the district court to deny Salesforce's motion to dismiss. In the interest of judicial economy, this Court should further direct the district court to grant Travelers all the declaratory relief requested in its complaint, since that relief follows as a matter of law from the determination that there is no potential for coverage and thus no duty to defend. The Court should remand the matter so the district court can determine the amount Salesforce must reimburse Travelers for the defense costs incurred on Salesforce's behalf since October 14, 2020.

## ARGUMENT

**I.** **As a matter of law, Travelers has no duty to defend Salesforce in the Underlying Lawsuits because the plaintiffs' petitions do not seek potentially covered damages.**

### A. The district court's order is reviewed *de novo*.

This Court reviews *de novo* a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), accepts all well-pleaded allegations as true, and construes them in the light most favorable to

the plaintiff. *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 403 (9th Cir. 2021).[2]

Interpretation of an insurance policy is a legal question reviewed *de novo. Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).

### B.   An insurer owes a duty to defend only those suits that seek potentially covered damages.

The parties agree that because the Travelers Policies were issued in California, California law applies to their interpretation.  (2-ER-9.)

Under California law, an insurer has a duty to defend its insured against third-party claims that seek damages that are potentially covered under the policy. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 19 (1995); *see also Montrose Chem. Corp. v. Superior Ct.*, 6 Cal.4th 287, 295, 299–300 (1993).  Where the only possible outcomes of a lawsuit against the insured are either (1) no liability, or (2) liability for uncovered or excluded damages, there can be no potential for coverage

---

[2]   Salesforce's notice of motion to dismiss did not identify the statute or rule on which it based its motion.  (See 2-ER-7.)  Likewise, the district court's dismissal order did not identify the basis.  (See 1-ER-3–4.)  In its supporting memorandum, Salesforce mentioned Rule 12 (2-ER-10), so Travelers assumes the court ordered dismissal under that rule.

and thus no duty to defend. *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1114 (1995); *State Farm Fire & Cas. Co. v. Drasin*, 152 Cal.App.3d 864, 868–69 (1984).

The insured bears the initial burden of showing the claim potentially falls within the policy's coverage; if it does so, the burden shifts to the insurer to demonstrate that coverage for the damages sought is barred by one or more policy provisions. *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188 (1998). "To prevail in an action seeking declaratory relief on the question of the duty to defend, 'the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential.'" *Delgado v. Interinsurance Exch. of Auto. Club of So. Cal.*, 47 Cal.4th 302, 308 (2009) (emphasis omitted) (quoting *Montrose Chem. Corp.*, 6 Cal. 4th at 300).

Whether there is a potential for coverage turns on the facts alleged in the underlying pleadings and other facts known to the insurer. *Friedman Prof. Mmgt. Co. v. Norcal Mut. Ins. Co.*, 120 Cal.App.4th 17, 34 (2004). "[I]f, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential

13

coverage, the duty to defend does not arise in the first instance." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655 (2005).

"An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. This approach misconstrues the principle of 'potential liability' under an insurance policy." *Gunderson*, 37 Cal.App.4th at 1114; *see also Friedman*, 120 Cal.App.4th at 34–35 ("An insured is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage.").

### C. The petitions in the Underlying Lawsuits do not seek potentially covered damages because of "bodily injury."

#### 1. The conduct prohibited by the Texas Sex Trafficking Statutes cannot be an "accident."

As stated, the Travelers Policies potentially cover damages for "bodily injury" only when caused by an "occurrence," defined as an "accident." (3-ER-299, 312.) If Salesforce cannot be liable for an "accident," then there is no potential for "bodily injury" coverage, and the court need not consider any policy exclusions or other applicable policy provisions. *See Waller*, 11 Cal. 4th at 16.

14

"In the context of liability insurance, an accident is "'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.'"" *Delgado*, 47 Cal.4th at 308 (citation omitted). The term refers to the nature of the insured's conduct that gives rise to liability. *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co.*, 5 Cal.5th 216, 221 (2018); *Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583, 596 (1998). "An intentional act is not an 'accident' within the plain meaning of the word." *Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 537 (1986) (footnote omitted); *accord Collin v. Am. Empire Ins. Co.*, 21 Cal.App.4th 787, 806 (1994) ("It is fundamental that allegations of intentional wrongdoing do not allege an 'accident.'"); *see also Merced Mut. Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 50 (1989) ("[A]n accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."); *Giddings v. Indus. Indem. Co.*, 112 Cal.App.3d 213, 220 (1980) (explaining that where a "complaint alleges a far-reaching scheme of intentional wrongdoing," it "utterly fails to allege this loss was caused by an 'occurrence'").

Numerous California cases illustrate that when the claims made against the insured in the underlying case depend upon proof of intentional conduct, there is no potential accident triggering the duty to defend under an "occurrence"–based policy. *See, e.g.*, *Delgado*, 47 Cal.4th at 306 (holding insurer had no duty to defend insured against assault and battery claims predicated on insured's striking and kicking plaintiff); *Gonzalez v. Fire Ins. Exch.*, 234 Cal.App.4th 1220, 1236 (2015) (holding insurer had no duty to defend against claims alleging that insured took pictures of assault and slandered victim; those were intentional acts, not accidents); *Royal Globe*, 181 Cal.App.3d at 538 (holding insurer had no duty to defend fraud and breach of contract claims, despite assertions that plaintiff suffered "bodily injury," where the alleged wrongful conduct was the insured's making a promise without an intention to keep it—inherently intentional, and therefore not accidental, conduct); *Lyons v. Fire Ins. Exch.*, 161 Cal.App.4th 880, 888 (2008) (holding insurer had no duty to defend against assault and false imprisonment claims predicated on insured's overt sexual advances towards plaintiff, which "simply could not be an accident"); *St. Paul Fire & Marine v. Superior Ct.*, 161 Cal.App.3d 1199, 1202–03

(1984) (holding insurer had no duty to defend against allegations of wrongful discharge, which cannot derive from accidental conduct because a decision to fire someone is intentional); *accord Catlin Underwriting Agencies Ltd. v. San Diego Refrigerated Servs., Inc.*, 469 F.App'x 529, 530 (9th Cir. 2012) (holding insurer owed no duty to defend against allegations that insured "'agreed, conspired, planned and engaged' in the ongoing, unauthorized release and sale of goods to third parties;" such allegations did not allege an accident potentially within the scope of coverage); *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 531 (4th Cir. 2015) (holding there was no potential for a covered "occurrence" with respect to claims that the insured participated and conspired in scheme to help claimant's former partner kidnap claimant's daughter).[3]

---

[3]  *See also Gdowski v. State Farm Gen. Ins. Co.*, 839 F.App'x 154, 155 (9th Cir. 2021) (holding that allegations of harassment, threatening, trespassing, and making fraudulent statements involve allegations of intentional conduct, not accidents); *Kogler v. State Farm Gen. Ins. Co.*, 788 F.App'x 461, 462 (9th Cir. 2019) (finding that "grabbing and dragging a person by the hair" is not an accident under a liability policy); *Henstooth Ranch, LLC v. Burlington Ins. Co.*, 770 F.App'x 804, 804 (9th Cir. 2019) (holding that insured's landscaping activities were not an "accident" triggering the defense duty); *Travelers Com. Ins. Co. v. Jennifer A.*, 699 F.App'x 607, 608 (9th Cir. 2017) (having "unprotected

The plaintiffs in the Underlying Lawsuits assert two statutory claims against Salesforce.

The first is based on Texas Civil Practice & Remedies Code Annotated § 98A.002(a), which provides, in relevant part, that "[a] defendant is liable to a victim of compelled prostitution . . . for damages . . . if the defendant: (1) engages in compelling prostitution with respect to the victim; [or] (2) *knowingly or intentionally* engages in promotion of prostitution, online promotion of prostitution, aggravated promotion of

---

sex with multiple partners" was not accidental conduct within the policy's "occurrence" coverage); *Aquarius Well Drilling Inc. v. Am. States Ins. Co.*, 593 F.App'x 720, 721 (9th Cir. 2015) (holding that allegations the insured "performed an inadequate well test and therefore misrepresented the condition of the well" alleged deliberate acts, not an accident within the potential scope of coverage); *Galvani v. Tokio Marine & Nichido Fire Ins. Co.*, 544 F.App'x 791, 792 (9th Cir. 2013) (holding that "strangulation" cannot occur by accident within the meaning of a liability policy); *Butler v. Clarendon Am. Ins. Co.*, 317 F.App'x 648, 650 (9th Cir. 2009) ("[T]respassing upon, selling, and converting [plaintiff's] vessels and personal property" was not an accident triggering the duty to defend.); *UMG Recordings, Inc. v. Am. Home Assurance Co.*, 321 F.App'x 553, 555 (9th Cir. 2008) (holding insurer owed no duty to defend against intentional interference with contract claims based on allegations that the insured withheld copies of recordings needed for release of album, since that conduct was intentional); *Dennis Produce, Inc. v. Hartford*, 260 F.App'x 989, 991 (9th Cir. 2007) (holding there was no accident, and thus no defense duty, where insured allegedly interfered with plaintiff's produce distribution contract by convincing grower to sell his crops to insured rather than plaintiff).

prostitution, or aggravated online promotion of prostitution that results in compelling prostitution with respect to the victim." (*See, e.g.*, 2-ER-229–31 (emphasis added).)

The second claim is based on Texas Civil Practice & Remedies Code Annotated § 98.002(a), which provides, in relevant part, that "[a] defendant who engages in the trafficking of persons or who *intentionally or knowingly* benefits from participating in a venture that traffics another person is liable to the person trafficked . . . for damages." (*See, e.g.*, 2-ER-231–32 (emphasis added).)

Neither of these statutory claims can be established by proving conduct that is merely accidental or negligent. Compelling a victim into prostitution, "knowingly or intentionally" promoting compelled prostitution, engaging in sex trafficking, and "intentionally or knowingly" benefitting from "participating" in a sex trafficking venture are inherently knowing or intentional actions, not actions that Salesforce could have taken by accident.

The Texas Supreme Court recently made clear that a party alleged to have benefitted from participation in a sex trafficking venture, like Salesforce here, can be liable under the Texas Sex

19

Trafficking Statutes only if the plaintiff proves purposeful acts. While this appeal has been pending, the Texas Supreme Court decided *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021), *cert. denied sub nom. Doe v. Facebook, Inc.*, 142 S.Ct. 1087 (2022). The Texas high court held that "[l]iability under these statutes requires a showing that a defendant acquired a benefit by 'participat[ing]' in a human-trafficking 'venture.' Such 'participation' connotes more than mere passive acquiescence in trafficking conducted by others." *Id.* at 96. It requires an "affirmative," "overt," act to further the sex trafficking venture. *Id.*

Thus, the claims alleged against Salesforce under the Texas Sex Trafficking Statutes, which create civil liability for sex-trafficking and compelled prostitution, do not implicate conduct that is accidental; they require proof of intentional wrongdoing. As a result, the damages sought by the plaintiffs are not because of "bodily injury" caused by an "occurrence" and therefore cannot be potentially covered under the Travelers Policies. *See Drasin*, 152 Cal.App.3d at 869 (finding there is no potential for "accident" coverage where the "*the nature of the alleged tort* has an element of intentional wrongdoing").

20

Salesforce sought to avoid this conclusion in the district court by arguing that the only intentional act pleaded in the Underlying Lawsuits was Salesforce's sale of software, and that any harm to the plaintiffs in the Underlying Lawsuits was an unforeseen consequence of that intentional act. Salesforce likened the situation here to that in *Liberty*, 5 Cal.5th at 225, in which the California Supreme Court held that an employer's intentional act of hiring an employee could still involve a covered accident where that employee then molested someone, giving rise to claims the employer was negligent in hiring or supervising the employee. (See 2-ER-12–14.)

Salesforce's argument is unsound. The plaintiffs in the Underlying Lawsuits seek to impose liability on Salesforce not only for the act of selling software, which alone does not violate any statute, but doing so *with the knowledge or intent it would be used for compelled prostitution and sex trafficking*. Thus, the plaintiffs in the Underlying Lawsuits allege (as they must under the Texas Sex Trafficking Statutes) that Salesforce foresaw the illegal and harmful use of its software.

21

*Liberty* is therefore distinguishable. As the Supreme Court explained in *Liberty*, although the employer's act of hiring the employee may have been intentional, the employee's act of molestation was unexpected and unintended, and thus an accident, from the employer's perspective. *Liberty*, 5 Cal.5th at 226, 228. Here, by contrast, the plaintiffs in the Underlying Lawsuits assert a claim based on Salesforce's sale of software *to knowingly promote and participate in Backpage's sex trafficking venture*. Their claim is not based on Salesforce's negligent failure to anticipate and prevent wrongdoing by Backpage, like the carelessness of the employer in *Liberty* in failing to investigate or supervise its employee before he hurt someone. As stated, Salesforce's alleged liability is based on statutes requiring its own knowledge of harmful consequences, and do not give rise to liability for mere negligence.

The district court therefore erred by concluding that Salesforce could "create a potential for coverage" if it showed in the Underlying Lawsuits "that it acted only negligently and not intentionally or knowingly." (1-ER-3.) The error seemingly flowed from a misapplication of *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966), in which

the California Supreme Court concluded an insurer had a duty to defend its insured against intentional assault allegations arising from a road rage altercation because the insured might have been able to prove in that case that he was merely negligent (because he acted in self-defense).  *Id.* at 267 n.1, 277.  *Gray* does not aid Salesforce in this case. Again, if the plaintiffs in the Underlying Lawsuits can prove nothing more than negligence on the part of Salesforce, they cannot prevail under the Texas Sex Trafficking Statutes.

The California Supreme Court clarified and distinguished *Gray* in *Delgado*, 47 Cal.4th 302, which also involved an insured who assaulted the plaintiff but claimed self-defense.  The policy in *Delgado*, like the Travelers Policies, limited coverage to bodily injury caused by "accident" (unlike the policy in *Gray*, which did not limit coverage to "accidents" and merely excluded coverage for bodily injury caused "intentionally" by the insured).  47 Cal.4th 305.  *Delgado* held the insured's intentional act of striking the plaintiff, even in self-defense, was not an "accident," hence there was no potential for coverage and the insurer had no duty to defend.  *Id.*  The *Delgado* court explained that, since the policy in *Gray* did not limit coverage to "accidents" and the only issue was

23

application of the policy's intentional acts exclusion, the court in *Gray* did not consider whether a deliberate assault, in self-defense or otherwise, could be an "accident" for purposes of the threshold coverage question. *Id.* at 313–14. Cases are not authority for propositions the court did not consider. *B.B. v. Cnty. of Los Angeles*, 10 Cal.5th 1, 11 (2020).

Under the California Supreme Court's analysis in *Delgado*, the purposeful acts alleged against Salesforce in the Underlying Lawsuits cannot be "accidents" triggering the potential for coverage. There is no duty to defend.

### 2. Recovery under the Texas Sex Trafficking Statutes requires proof of intended or expected bodily injury, which is excluded from coverage.

The Travelers Policies also expressly exclude coverage for damages because of "bodily injury" that was "expected or intended from the standpoint of the insured." (3-ER-300.)

California courts have consistently applied this "intentional acts exclusion" to bar coverage when the damages sought in the underlying complaint cannot be recovered without proof of acts committed with knowledge that the harm complained of would result. *E.g., J. C. Penney*

24

*Cas. Ins. Co. v. M. K.*, 52 Cal.3d 1009, 1019, 1021 (1991) (holding that intentional acts exclusion (along with Cal. Ins. Code § 533) barred coverage for child molestation: "There is no such thing as negligent or even reckless sexual molestation. The very essence of child molestation is the gratification of sexual desire. The act is the harm. There cannot be one without the other. Thus, the intent to molest is, by itself, the same as the intent to harm."); *Upland Anesthesia Med. Grp. v. Doctors' Co.*, 100 Cal.App.4th 1137, 1144 (2002) (holding that intentional acts exclusion barred coverage for class action claims that defendants solicited illegal cash payments under threat of denying anesthesia to Medi-Cal patients; such conduct did not sound in negligence); *Reagen's Vacuum Truck Serv., Inc. v. Beaver Ins. Co.*, 31 Cal.App.4th 375, 388–89 (1994) (holding that intentional acts exclusion barred coverage for fraud case: "There cannot be a negligent or reckless fraudulent concealment since the elements are 1) knowingly ordering an employee to work in an unsafe environment, and 2) deliberately concealing the danger from the employee.").

Compelling a victim into prostitution, "knowingly or intentionally" promoting compelled prostitution, engaging in sex trafficking, and

"intentionally or knowingly" benefitting from "participating" in a sex trafficking venture are inherently deliberate acts taken with the expectation, even if not the intention, that harm to the victims will result. Simply put, to allege Salesforce violated the Texas Sex Trafficking Statutes is to allege Salesforce intended or expected the harm complained of and the damages resulting therefrom—just as alleging child molestation necessarily alleges intentionally caused harm, *J. C. Penney*, 52 Cal.3d at 1019, 1021.[4]

The district court's suggestion based on *Gray,* 65 Cal.2d 263, that Salesforce could "create a potential for coverage" by proving it did not intend or expect the harm (*see* 1-ER-3) is simply incorrect and finds no support in that case. *Gray* is distinguishable from this case for at least two reasons.

---

[4]  Indeed, under California Insurance Code section 533, "[a]n insurer is not liable for a loss caused by the wilful act of the insured."  This statute functions as an exclusionary clause implied by law into every insurance policy.  It reflects a fundamental public policy that willful wrongdoing is uninsurable.  *J. C. Penney,* 52 Cal.3d at 1019 & n.8.  The fact that liability under the Texas Sex Trafficking Statutes requires proof of willful wrongdoing provides an independent basis to find no potential for coverage and thus no duty to defend under Coverage A.

26

First, as stated *supra* page 23, the coverage provision in *Gray* did not limit coverage to bodily injury caused by accident, and the insurer relied only on an exclusionary clause barring coverage for intentionally caused harm to deny its duty to defend. *Id.* at 267, 272–73. Applying the rules that exclusions are interpreted narrowly and ambiguities are interpreted most favorably to the insured, the California Supreme Court concluded that under the policy as written, the insured would have reasonably expected to receive a defense as long as he did not mean to cause harm, and that the insurer therefore had a duty to defend. *Id.* at 274.

In contrast to the policy language at issue in *Gray*, the Travelers Policies exclude coverage for harm that is "*expected* or intended" from the standpoint of the insured. (3-ER-300 (emphasis added).)

Second, the Supreme Court in *Gray* concluded that there was a potential for coverage because the insured could be held liable for harming the plaintiff if he had acted in self-defense or without intending to cause harm. *Id.* at 277. Hence, the underlying plaintiff in *Gray* could have recovered if the insured was merely negligent. The same is not true here. The plaintiffs' claims in the Underlying Lawsuits

27

rest entirely on the Texas Sex Trafficking Statutes. As explained, the plaintiffs cannot recover damages from Salesforce under those statutes unless they prove Salesforce knowingly or intentionally participated in sex trafficking or promoting compelled prostitution. *In re Facebook, Inc.*, 625 S.W.3d at 96. There is, then, no potential that Salesforce could ever be required to pay damages for merely negligent conduct that would fall outside the exclusion in the Travelers Policies for expected or intended harm. In this circumstance—i.e., where the only two possible outcomes of the Underlying Lawsuits are either no coverage or no liability—there is no potential for coverage and thus no duty to defend. (*See Drasin*, 152 Cal.App.3d at 868–69.)

### D. The petitions in the Underlying Lawsuits seek damages that are excluded from "personal injury" coverage.

The Travelers Policies also cover damages for "personal injury," including false detention or imprisonment, but not when "caused by . . . the insured with the knowledge that the act would violate the rights of another and would inflict 'personal . . . injury.'" (3-ER-303.)

The plaintiffs in the Underlying Lawsuits allege that sex traffickers controlled the plaintiffs' travel to various locations, at which

they were compelled to perform sexual acts. (*See, e.g.*, 2-ER-37.) They allege that tools provided by Salesforce, which their traffickers accessed through Backpage, facilitated their trafficking. (*See, e.g.*, 2-ER-37–43.) And they allege that Salesforce is liable to them for damages because Salesforce "intentionally or *knowingly*" benefited from "participating" in the sex trafficking venture and "*knowingly* or intentionally" promoted this compelled prostitution. (*See, e.g.*, 2-ER-53–57 (emphasis added).) Assuming these allegations suggest false detention or imprisonment occurred, it is not the sort of false imprisonment that can occur without knowledge the victims' rights are being violated. Proof of Salesforce's liability requires proof of conduct performed with *knowledge* that victims were being compelled and trafficked, causing them personal injury and violating their basic human rights.

To be sure, under certain circumstances, false imprisonment can result from negligence, which could be potentially covered by a general liability policy. *Lyons,* 161 Cal.App.4th at 888. For instance, a false imprisonment claim may arise out of a "shopkeeper at closing time intentionally lock[ing] his storage vault but forget[ting] he had sent an employee inside to take inventory," or "a store employee honestly but

mistakenly detain[ing] a customer the employee believes is a shoplifter." *Id.*

But the claims in the Underlying Lawsuits are nothing like that. Any false imprisonment committed by the sex traffickers and *knowingly* facilitated by Salesforce could not have happened by mere factual mistake, without knowledge that the victim's rights to be free from compelled sexual activities would be violated and that they would suffer personal injury.

Thus, there is no potential for coverage for any alleged "personal injury" (Coverage B) any more than there is for any alleged "bodily injury" (Coverage A). Travelers has no duty to defend. *See Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F.App'x 233, 234 (3d Cir. 2012) (knowing violation of another's rights exclusion applied to claims "brought by the victims of a corrupt kickback scheme").

## E. The plaintiffs in the Underlying Lawsuits abandoned their original negligence claims, which are not legally viable in any event.

The district court ruled there was a potential for coverage, and thus Travelers had a duty to defend, because "[t]he facts underlying the

Texas litigation could support claims for negligence—indeed, the Texas plaintiffs originally brought negligence claims." (1-ER-3.)

The district court did not identify which facts pled in the Underlying Lawsuits concerning Salesforce's sale of software to Backpage supported the existence of potential negligence liability under Texas law. But even if such facts were initially alleged, they cannot be the basis of any future damages award to the plaintiffs in the Underlying Lawsuits on a negligence theory because the plaintiffs abandoned their negligence claims when they filed amended pleadings in October 2020 omitting those claims. *Cont'l Alloys & Servs. (Del.) LLC v. YangZhou Chengde Steel Pipe Co.*, 597 S.W.3d 884, 898 (Tex. App. 2020) ("An amended petition supersedes and supplants all previous pleadings. [Citations.] The law treats claims omitted from the amended pleading as dismissed and abandoned."); *see* Tex. R. Civ. P. 65.

The district court speculated that the plaintiffs in the Underlying Lawsuits, having once pled and then abandoned their negligence claims, might replead those claims in the future. (1-ER-3.) But a duty to defend cannot be based on speculation about how the pleadings might be amended. *Gunderson*, 37 Cal.App.4th at 1114 (speculating

31

about ways a complaint might be amended to state a covered claim cannot create a duty to defend).

*Gunderson* is instructive. That case arose out of a dispute over an easement. Although the third-party claimant had sent letters complaining about the insured having torn down a fence and cut down trees on the disputed property, the complaint against the insured did not seek damages for harm to the fence or trees but sought only equitable relief related to ownership of the easement. *Id.* at 1115. The court concluded that the complaint did not trigger the insurer's duty to defend since the claimant, despite knowing of the potential property claims, chose not to pursue them as part of her litigation strategy. *Id.* at 1116.

Likewise here, the plaintiffs in the Underlying Lawsuits were well aware of whatever factual basis they had for asserting negligence claims but made a deliberate decision not to pursue them, in favor of their statutory claims. Travelers has no duty to defend Salesforce based on the plaintiffs' abandoned negligence claims.

Further, the district court's reasoning that "[t]he facts underlying the Texas litigation could support claims for negligence" (1-ER-3) is

32

legally wrong. The Texas Supreme Court recently decided that common law negligence claims based on facts like those here are preempted by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. We explain.

Section 230 shields internet companies, including "access software provider[s]," from liability for "publishing" illegal or illicit third party materials. 47 U.S.C. § 230(c)(1), (e)(3) (providing that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and that "[n]o cause of action may be brought and no liability may be imposed . . . that is inconsistent with this [prohibition]"), (f)(2), (4).

In *In re Facebook*, 625 S.W.3d at 94, the Texas Supreme Court held that § 230 precluded sex trafficking victims from bringing negligence claims against Facebook based on Facebook's permitting third-party sex traffickers to use its platform to engage in and promote their illegal activities.

Under *In re Facebook*, any claims predicated upon Salesforce passively allowing Backpage to use its software and services to promote

33

compelled prostitution and engage in sex trafficking hinge on the allegation that Salesforce should be liable for facilitating (or failing to stop) its software products from being used to publish Backpage's content online. (See 2-ER-275 (alleging negligence based on Salesforce "providing the tools, expertise, and support to Backpage *to facilitate and profit from the posting* of sex trafficking victims) (emphasis added).) As a result, any such claims would likely be preempted by § 230. There is no reason to anticipate that the plaintiffs will seek to replead state law negligence claims that have not only been abandoned but now appear to be preempted by federal law.

## II.  Travelers's complaint should be reinstated with directions that all the declaratory relief sought in the complaint be granted.

If this Court concludes, as it should, that there is no potential for coverage, the Court should not only reverse the dismissal of Travelers's complaint but also direct the district court to grant Travelers the declaratory relief it seeks.

A ruling that there is no potential for coverage necessarily means there is no duty to defend at a matter of law, *see Montrose Chem. Corp.*,

6 Cal. 4th at 300, which logically compels judgment for Travelers on its first claim for declaratory relief seeking that ruling.

Further, "where there is no duty to defend, there *cannot be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal.4th 945, 958 (2001). So the conclusion that Travelers owes no duty to defend compels the conclusion that Travelers can never owe indemnity. Travelers is therefore also entitled to judgment on its second claim for declaratory relief.

Finally, because Travelers paid defense costs under a full reservation of rights, a conclusion that any duty to defend ended no later than October 14, 2020, would entitle Travelers to reimbursement for its unjust enrichment of Salesforce—payment of defense costs not owed—from that date. *See Buss v. Superior Ct.*, 16 Cal.4th 35, 52 (1997).

In sum, judgment for Travelers on all of its claims for declaratory relief necessarily follows as a matter of law from the conclusion that Travelers had no duty to defend as of October 14, 2020. It would be futile and wasteful of judicial resources to remand for anything other than a determination of the reimbursement owed and entry of a final

35

judgment. *See* 28 U.S.C. § 2201; *Mechammil v. City of San Jacinto*, 653 F.App'x 562, 565 (9th Cir. 2016) (reversing order dismissing declaratory relief complaint under Rule 12(b)(6) and directing district court to grant the requested declaratory relief); *see Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (finding appellate court may *sua sponte* direct grant of summary judgment for nonmoving party where the issues were sufficiently developed and litigated and further proceedings would waste judicial resources).

## CONCLUSION

For the foregoing reasons, Travelers respectfully requests this Court (1) reverse the district court's dismissal order with directions that the district court grant Travelers all the declaratory relief sought in its complaint, and (2) remand for a determination of the amount Salesforce must reimburse Travelers for costs Travelers incurred defending Salesforce after October 14, 2020.

April 10, 2023

**HORVITZ & LEVY LLP**
  MITCHELL C. TILNER
  EMILY V. CUATTO


By: _____ s/Emily V. Cuatto _____


Attorneys for Plaintiff-Appellant
**TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA**

## STATEMENT OF RELATED CASES

Travelers knows of no cases requiring disclosure under 9th Cir. R. 28-2.6.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-15862

I am the attorney or self-represented party.

**This brief contains** | 6,877 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [         ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Emily V. Cuatto | **Date** | 04/10/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                     *Rev. 12/01/22*

39